

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America *ex rel.* WILLE POLE, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Petitioner, | No. 02 C 3393 |
| v. | Honorable Charles R. Norgle |
| BLAIR J. LEIBACH, Warden, Danville Correctional Center | |
| Respondent. | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Willie Pole's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, Willie Pole ("Pole"), challenges his conviction under Illinois law for first degree murder and attempted armed robbery. Pole argues that he is entitled to habeas relief based on ineffective assistance of counsel at both the trial and appellate stages of his state case. For the reasons stated below, the petition is denied.

## I. BACKGROUND

On habeas review, the court must presume that the state courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 449 U.S. 539, 544-46 (1981); Todd v. Schomig, 283 F.3d 842, 846 (7th Cir. 2002). Therefore, the court adopts the Illinois Appellate Court's recitation of facts. See People v. Pole, No. 1-96-1030 (1997) (unpublished order under Supreme Court Rule 23)).

### A. Facts

On September 27, 1994, the victim, Bernard Jackson ("Jackson") arrived at his job at the E

& J Tire Shop to see if he could make some extra money on his day off. Jackson was accompanied by his girlfriend Carmania Payton ("Payton") and their son. Jackson arrived at the tire shop at 5:30 p.m., which closed at 7:00 p.m. Another employee, Antoine Patillo ("Patillo") left a few minutes before closing. It was around that time that Pole arrived in a white Ford Escort. He asked the victim's brother, LaRue Jackson ("LaRue") where Patillo went, and LaRue informed him that Patillo had left.

Moments later, a red van pulled up to the tire shop and three men got out. Pole asked LaRue if the men in the red van were in the Gangster Disciples street gang. LaRue did not know whether they were or not. Pole then walked over to the telephone, at which time LaRue observed his brother working on the red van. Approximately ten minutes later, Payton told LaRue that Jackson had been shot. LaRue told the police about his conversation with Pole regarding gang affiliation. At 8:30 p.m., the police took LaRue to 86th and Racine where he identified Pole and his car.

At trial, Payton testified that she saw Pole pull up in a compact car, and also observed the red van arrive at the shop. Payton saw Pole go into the shop and then to a pay phone. After Pole left, Payton and her child stood next to Jackson as he worked on a car. As they stood there, Payton heard a gunshot and saw that Jackson had stopped breathing.

John Warren ("Warren"), the owner of E & J Tire Shop testified that he too saw the red van on the night of the murder. Jackson told Warren that he would change the tires on the van, because he needed the extra money. While Jackson was working on the tires, Warren heard a commotion and ran to Jackson. He asked Jackson if everything was all right, when Jackson replied that he was "hit." Cory Lamb ("Lamb"), Corey Harvey ("Harvey"), and Caine Harris ("Harris") were the men in the red van that evening. As Jackson installed the new tires on Lamb's van, the three men saw

a white Chevrolet pull up to the tire shop. Lamb testified that when he went outside he told Harvey and Harris that he hoped nothing had gone wrong, because that area was notorious for gang activity. Lamb knew that the Blackstone street gang frequented the area around the tire shop, and that the Black Disciples were enemies of the Blackstones. Lamb further stated that neither he nor Harris or Harvey were members of the Disciples.

Furthermore, fourteen-year-old Andrea Hamilton ("Hamilton") testified that she knew Pole was a member of the Blackstones. On September 27, 1994, Pole came to Hamilton's house and told her to walk to 86th and Elizabeth streets with him to pick up his car, and there were police in the area. When they arrived at the car, Pole grabbed a gun from the back seat and told Hamilton to hide it. On the way home, Pole told Hamilton that he had shot a "Sipe," or Gangster Disciple at 85th and Racine. When Hamilton arrived home, she hid the gun a drawer. Ramon, Hamilton's brother, came into the room while later and asked if Pole gave her anything. Hamilton gave the gun to her brother. A short time later, police detectives arrived at the house and Ramon turned the gun over to them.

After Pole's arrest, he made varying statements to the police. He first stated that he went to the tire shop to give Patillo some money. When he saw members of the Gangster Disciples, Pole went around the corner and told his Blackstone gang members that members of the rival gang members were at the tire shop. Pole got a gun from his house to prove himself to his fellow gang members. According to Pole's statement, while Ramon showed Pole how to work the safety on the gun, it discharged and fired in the direction of the van. Jackson was shot in the back, and the bullet exited through his chest. Pole stated that he panicked and ran away.

The detectives then informed Pole that his version of the night conflicted with Ramon's statement. In Ramon's version of the events, Pole and Ramon walked in the alley next to the tire

3

shop, put on ski masks, and when Pole rounded the corner, he aimed the gun at the van, and fired. When confronted with this story, Pole gave a second statement, similar to Ramon's story.

## B. Procedural History

Prior to the trial, the court denied Pole's motion in limine to bar reference of his gang activity, and also denied a motion to suppress statements Pole gave to the police. Pole was found guilty in a jury trial, and sentenced to 44 years in prison for murder, and 15 years for attempted armed robbery.

Pole appealed his conviction to the Illinois Appellate Court, where he raised two issues. First, Pole argued, the trial court erred by not inquiring about Pole's claim that his counsel failed to call potential exonerating witnesses. Second, Pole argued that the trial court erred by allowing the jury to hear evidence about his membership in a street gang. On December 22, 1997, the appellate court affirmed Pole's convictions and sentences. Then, on April 14, 1998, Pole requested leave to file a late petition for leave to appeal to the Illinois Supreme Court. That motion was granted on October 7. In his petition for leave to appeal, Pole argued the same issues in his direct appeal. On December 2, 1998, the Illinois Supreme Court denied the leave to appeal.

Then, on December 29, 1998, Pole filed a petition for post-conviction relief in the Circuit Court of Cook County. The Circuit court dismissed Pole's motion on January 15, 1999. Pole appealed the dismissal, arguing that he was entitled to an evidentiary hearing to develop facts properly alleged in his post-conviction petition, because those facts were not previously raised, and stated a constitutional claim. On April 13, 2001, the Illinois Appellate Court affirmed the dismissal of the post-conviction petition. The Illinois Supreme Court denied Pole's petition for leave to appeal on June 29, 2001. Then, on May 10, 2002, Pole filed his § 2254 motion with the United States

District Court, and raised the following issues: 1) ineffective assistance of trial counsel for failure to allow Defendant to testify at the motion to suppress Pole's statements; 2) ineffective assistance of counsel because counsel failed to investigate the case; and 3) ineffective assistance of appellate counsel due to counsel's failure to raise the ineffectiveness of trial counsel. The Government filed its Response on November 20, 2003, and Pole replied on August 16, 2004. Pole's Motion is fully briefed and before the court.

## II. ANALYSIS

### A. Standard of Decision

Pole's petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is *contrary to* clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court's decision is an *unreasonable application* of clearly established

Supreme Court law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case").

Before reviewing the Illinois courts' decisions, however, this court must determine whether Pole fairly presented his federal claims to the state courts. Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). Any claim not presented to the state's highest court is deemed procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (indicating that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process").

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the

6

claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Stewart v. Smith, 536 U.S. 846, 860 (2002); see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991). For example, waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Wright v. Walls, 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state ground in Illinois); Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent federal habeas review). However, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id. With these principles in mind, we turn to Pole's motion.

## B. Pole's Ineffective Assistance of Counsel Claims

In order to establish that his counsel was ineffective, Pole must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694).

However, these claims were previously raised in Pole's direct appeal of his conviction. See Pet.'s § 2254 Mot., Ex. G. The appellate court's decision was based on independent state grounds, and were "adequate to support the judgment." Coleman, 501 U.S. at 729. Thus, any issues raised in the current motion are procedurally barred under § 2254.

However, with an abundance of caution, the court will examine the substantive aspects of Pole's motion. Pole does not establish that the state court's decision was contrary to, or an unreasonable application of federal law. See Williams, 529 U.S. at 405. Neither party disputes that Pole has fairly presented his federal claims to the state courts. See 28 U.S.C. § 2254(b)(1)(A). When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that Grays's attorney performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United
8

States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Pole must show "errors so serious that counsel was not functioning as 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d 839 (quoting Strickland, 466 U.S. at 687).

Pole first asserts that his counsel's performance was deficient because counsel failed to allow Pole to testify at the motion to suppress. Mot. Under 28 U.S.C. § 2254, at 20. Pole further alleges that defense counsel's performance fell below the Strickland standard, because counsel "based the success of the motion on the testimony of the State's witnesses and that this was unsound trial strategy." Resp't Ans., Ex. G. According to Pole, this was so prejudicial, that the outcome of the motion would have been different had he testified. Id. Defense counsel's theory was that Pole was young, inexperienced, and naive about the judicial system, as to render his confession involuntary. Additionally, defense counsel cross examined the State's witnesses. Such action, cannot be said to fall below the Strickland standard. Id.

In rare cases, an attorney's failure to investigate or call certain witnesses can constitute ineffective assistance of counsel. See Sullivan v. Fairman, 819 F.2d 1382, 1390 (7th Cir. 1987). However, "[u]sually, counsel's decision not to call a witness is a tactical decision not subject to review." Barnhill v. Flannigan, 42 F.3d 1074, 1078 (7th Cir. 1994). The court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsel's strategic decisions in this case. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990).

Pole also contends that he was denied effective assistance of trial counsel because counsel failed to "investigate" his case. See Resp't Ans,. Ex. G. The appellate court, upon review of Pole's Post-Conviction petition, found the petition and supporting affidavits inadequate to constitute a sufficient claim for relief. Id. Ramon's affidavit indicates that he was not present at the time the gun

was fired. Such information adds nothing to the issue of Pole's guilt or innocence. Therefore, the affidavit could not change the outcome of Pole's jury trial, and as a result, Pole's ineffective assistance of counsel claim must fail.

Lastly, Pole claims that his appellate counsel was ineffective as a result of his failure to argue the ineffective assistance of trial counsel. "The Sixth Amendment right of effective assistance of counsel applies to a criminal defendant's trial, sentencing, and the first appeal of right." Jones v. Welborn, 877 F. Supp. 1214, 1219 (S.D. Ill. 1994) (citing Pennsylvania v. Finley, 481 U.S. 551 (1987)). The familiar Strickland standard therefore applies to defense counsel's performance both at trial, and on direct appeal. See Lee v. Davis, 328 F.3d 896, 900 (7th Cir. 2003); Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001). Appellate counsel's performance is objectively unreasonable "if counsel fails to appeal an issue that is both obvious and clearly stronger than the one that was raised." Winters, 274 F.3d at 1167. Prejudice is established where failing to raise such an issue "'may have resulted in a reversal of the conviction, or an order for a new trial.'" Id. (quoting Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)); see also Lee, 328 F.3d at 900.

However, as previously stated, defense counsel's actions at the motion to suppress were not "substandard." Counsel's strategy was to advance a theory that Pole was young, inexperienced, and naive about the judicial system. He chose not to allow Pole to testify, because he felt it would not have been beneficial. Had Pole testified, he would have stated that he was "high, had not slept for 30 hours, and that the police told him that the statement Pole signed, but did not read, implicated the co-defendants and not himself." Resp't Ans. at 9, Ex. G. Based on these facts, appellate counsel chose not to argue that trial counsel's action were unreasonable, and fell below the Strickland standard. Had Pole testified, there is no indication that the outcome of the motion to suppress would

be different. This was not a case where appellate counsel failed "to appeal an issue that is both obvious and clearly stronger than the one that was raised." Winters, 274 F.3d at 1167. There is no indication that had appellate raised an ineffective assistance of trial counsel claim, the result would be a "reversal of the conviction, or in an order for a new trial." Id. As a result, Pole's claim that appellate counsel was ineffective must fail.

### III. CONCLUSION

For the foregoing reasons, Willie Pole's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

IT IS SO ORDERED

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 8-10-05